MICHELE J. BEILKE (State Bar No. 194098)
mbeilke@huntonAK.com
JULIA Y. TRANKIEM (State Bar No. 228666)
jtrankiem@huntonAK.com
GABRIEL M. HUEY (State Bar No. 291608)
ghuey@huntonAK.com
HUNTON ANDREWS KURTH LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone: 213 • 532 • 2000
Facsimile: 213 • 532 • 2020

Attorneys for Defendants
STRYKER CORPORATION and
HOWMEDICA OSTEONICS CORP.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT PICETTI, individually, and on behalf of other members of the general public similarly situated; | Case No.: |
| Plaintiff, | [Removed from Alameda County Superior Court Case No. RG19044860] |
| v. | |
| STRYKER CORPORATION, a Michigan corporation; HOWMEDICA OSTEONICS CORP., a New Jersey Corporation; and DOES 1 to 100, inclusive; | **DEFENDANTS STRYKER CORPORATION AND HOWMEDICA OSTEONICS CORP.'S NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453** |
| Defendants. | |
| | [*Civil Cover Sheet; Declaration of Andrew Quesnelle; Declaration of Gabriel M. Huey; Corporate Disclosure Statement; Certification of Interested Entities or Persons; and Certificate of Service Filed Concurrently Herewith*] |
| | Complaint Filed: November 26, 2019 |

*Hunton Andrews Kurth LLP*
*550 South Hope Street, Suite 2000*
*Los Angeles, California 90071*

DEFENDANTS' NOTICE OF REMOVAL

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332(a) (diversity jurisdiction), 1332(d) (the Class Action Fairness Act of 2005 ("CAFA")), 1441, 1446, and 1453, Defendants Stryker Corporation ("Stryker") and Howmedica Osteonics Corp. ("Howmedica") (collectively, "Defendants") hereby remove the action filed by Robert Picetti ("Plaintiff") in the Superior Court of the State of California, County of Alameda, and captioned Case No. RG19044860, to the United States District Court for the Northern District of California.  In support thereof, Defendants state as follows:

## I.      JURISDICTION AND VENUE

1.      *Jurisdiction*.  Removal is proper under 28 U.S.C. §§ 1441 and 1446 because the above-captioned action is a civil action that satisfies the requirements of diversity, codified in part in 28 U.S.C. § 1332(a), and the Class Action Fairness Act of 2005 ("CAFA"), codified in part in 28 U.S.C. § 1332(d).  Under Title 28 of the United States Code § 1332(a), the federal district courts have original jurisdiction of all civil actions where the matter is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.  As demonstrated below, there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.  Under Title 28 of the United States Code § 1332(d)(2), the federal district courts have original jurisdiction of all class actions where any member of a class of plaintiffs is a citizen of a state different from any defendant and the amount in controversy exceeds the sum or value of $5,000,000.  As demonstrated below, there is diversity of citizenship between a member of a class of plaintiffs and one or more of the defendants, and the amount in controversy exceeds $5,000,000. Accordingly, this Action is properly removed to the United States District Court for the Northern District of California.

2.      This Court is in the judicial district embracing the place where the state

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

court case was brought and is pending.  Specifically, the United States District Court for the Northern District of California embraces Alameda County.  Thus, this Court is the district to which this case is properly removed.  *See* 28 U.S.C. §§ 1441(a) and 1446(a).

3.    *Intradistrict Assignment*.  Pursuant to Local Rules 3-2 and 3-5(b), this case is properly assigned to the San Francisco Division or Oakland Division.  L.R. 3-2(d) ("Except as provided in Civil L.R. 3-2(c), all civil actions which arise in the counties of Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo or Sonoma shall be assigned to the San Francisco Division or the Oakland Division").

## II.    THE ACTION, TIMELINESS, AND SECOND NOTICE OF REMOVAL

4.    On November 26, 2019, Plaintiff Robert Picetti, purportedly on behalf of himself and all other members of the general public similarly situated, filed a Class Action Complaint against Defendants Stryker Corporation and Howmedica Osteonics Corp., which is currently pending in the Superior Court for the State of California, County of Alameda, as Case No. RG19044860, *Robert Picetti v. Stryker Corporation et al.* (the "State Court Action").

5.    On December 3, 2019, Defendants were served with the Summons and Complaint ("Complaint") for the State Court Action.

6.    Within 30 days of service of the Complaint, on January 2, 2020, Defendants timely filed a Notice of Removal ("First Notice") pursuant to 28 U.S.C. § 1446(b)(1).  Plaintiff subsequently filed a Motion to Remand, which Defendants opposed.  The Court granted Plaintiff's Motion to Remand on June 8, 2020, on the ground that the amount in controversy under diversity jurisdiction did not exceed $75,000 and the amount in controversy under CAFA did not exceed $5,000,000.

7.    While in state court, on September 29, 2020, Plaintiff served verified Supplemental Responses to Howmedica's Form Interrogatories – General (Set One) claiming that "Plaintiff was always on call . . . ."  Declaration of Gabriel M. Huey

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

("Huey Decl.") ¶ 6, Ex. 3-4.  At the first day of Plaintiff's deposition on October 2, 2020, Plaintiff testified that, *inter alia*, he was on-call 24/7, never took a meal or rest period, and other sales representative in California worked similar hours.  Huey Decl. ¶ 7, Ex. 5.  The foregoing later-discovered facts demonstrate that the amount in controversy under diversity jurisdiction exceeds $75,000 and the amount in controversy under CAFA exceeds $5,000,000.

8.    Pursuant to 28 U.S.C. §§ 1446(b)(3), (c)(1), Defendants' Second Notice of Removal ("Second Notice") is timely because (1) it is filed within 30 days after receipt of Plaintiff's verified Supplemental Responses to Howmedica's Form Interrogatories – General (Set One) and Plaintiff's deposition; and (2) it is filed within one (1) year after commencement of the action on November 26, 2019.  See *Johnson v. America Online, Inc.*, 280 F. Supp. 2d 1018, 1023 (N.D. Cal. 2003) *approving Benson v. SI Handling Systems, Inc.*, 188 F. 3d 780, 783 (7th Cir. 1999) (holding plaintiffs concession that they sought more than the jurisdictional minimum amount "opened a new 30-day window for removal under § 1446(b) where the later removal was filed within one year of commencement of the action).

9.    Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Defendants, which papers include the following:

    a.  The Summons and Complaint are attached hereto as **Exhibit A**;

    b.  The Case Management Order is attached hereto as **Exhibit B**;

    c.   The Order Denying Application Re: Peremptory Challenge as to Brad Seligman is attached hereto as **Exhibit C**;

    d.  Defendants' Answer is attached hereto as **Exhibit D**;

    e.  The Order Denying Request Re: Peremptory Challenge as to Brad Seligman is attached hereto as **Exhibit E**;

    f.  The Order Granting Application Re: Peremptory Challenge as to Brad Seligman is attached hereto as **Exhibit F**;

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071**

g.  The Order Determining the Case Complex is attached hereto as **Exhibit G**; and

h.  The Order Entering Dismissal of Plaintiff's Seventh Cause of Action for Unreimbursed Business Expenses is attached hereto as **Exhibit H**.

i.  Defendants' Amended Answer is attached hereto as **Exhibit I**.[1]

10.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Second Notice is being served upon Plaintiff's counsel and a copy is being filed with the Clerk of the Superior Court for the State of California, County of Alameda.

### III.    NOTICE OF INTERESTED PARTIES

11.    Pursuant to Local Rule 3-15, Defendants are filing a Certification of Interested Entities or Persons concurrently with this Notice of Removal.

### IV.    DIVERSITY JURISDICTION

12.    The Action also is a civil action over which this Court has diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332(a).  The Action is removable because there is complete diversity between all properly joined parties and the amount in controversy exceeds the jurisdictional minimum.  Therefore, removal is proper under 28 U.S.C. § 1441 in that:

**A.    The Parties Are Completely Diverse.**

13.    Plaintiff is a citizen of the State of California because he is domiciled in that state.  As alleged in the Complaint, Plaintiff "is an individual residing in the State of California."  Compl. ¶ 5.   For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd*., 704 F.2d 1088, 1090 (9th Cir. 1983).  Accordingly, Plaintiff is a citizen of the State of California.

14.    Defendant Stryker Corporation is a citizen of Michigan and not a citizen of California.  Stryker is, and was at the time of filing of this State Court Action, a

---

[1] Defendants filed their Amended Answer on October 23, 2020.  On October 22, 2020, the state court sustained Plaintiff's Demurrer to Defendants' Answer without leave to amend in part, sustained it with leave to amend in part, and in part overruled it.  Defendants, however, do not yet have a copy of the order on Plaintiff's Demurrer.

DEFENDANTS' NOTICE OF REMOVAL

corporation organized and existing under the laws of the State of Michigan. Declaration of Andrew Quesnelle ("Quesnelle Decl.") ¶ 3; Compl. ¶ 6. The phrase "principal place of business" in 28 U.S.C. § 1332(c)(1) refers to the place where a corporation's high-level officers direct, control, and coordinate the corporation's activities, i.e., its "nerve center," which typically will be found at its corporate headquarters. *Hertz Corp. v. Friend*, 559 U.S. 77, 95–96 (2010). Stryker's corporate headquarters are, and were at the time of filing of this State Court Action, located in Michigan. Quesnelle Decl. ¶ 3. Thus, for removal purposes, Stryker is a citizen of Michigan, not California. See 28 U.S.C. § 1332(c)(1).

15.    Defendant Howmedica Osteonics Corp. is a citizen of New Jersey and not a citizen of California. Howmedica is, and was at the time of filing of this State Court Action, a corporation organized and existing under the laws of the State of New Jersey. Quesnelle Decl. ¶ 4; Compl. ¶ 6. Howmedica's corporate headquarters are, and were at the time of filing of this State Court Action, located in New Jersey. Quesnelle Decl. ¶ 4. Thus, for removal purposes, Howmedica is a citizen of New Jersey, not California. See 28 U.S.C. § 1332(c)(1).

16.    In summary, Plaintiff is a citizen of California, Stryker Corporation is a citizen of Michigan, and Howmedica Osteonics Corp. is a citizen of New Jersey. Complaint ¶ 5; Quesnelle Decl. ¶¶ 3-4.

17.    Based on the foregoing, there is complete diversity of citizenship between Plaintiff, on the one hand, and Defendants Stryker Corporation and Howmedica Osteonics Corp., on the other hand.[2]

**B.    The Amount In Controversy Exceeds $75,000.**

18.    The amount in controversy for Plaintiff's individual claims exceeds the

---

[2]  Although Plaintiff has also named fictitious defendants "DOES 1 through 100," 28 U.S.C. § 1441(b) provides, "the citizenship of defendants sued under fictitious names shall be disregarded." *See also Fristos v. Reynolds Metals Co.,* 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of "Doe" defendants does not deprive the Court of jurisdiction.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

sum or value of $75,000, exclusive of interest and costs.  Defendants need only show by a preponderance of evidence that Plaintiff's claims place more than $75,000 at issue. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403–04 (9th Cir. 1996) (noting "preponderance of the evidence" in removal papers is appropriate standard of proof for satisfaction of amount in controversy).  To satisfy this standard, Defendants may support federal jurisdiction by: (1) establishing that it is facially apparent that Plaintiff's claims more likely than not exceed the amount in controversy threshold; (2) setting forth in the notice of removal the facts in controversy that support a finding of the requisite amount; (3) submitting an affidavit showing that the amount in controversy is met; or (4) where remand has previously been ordered, conducting discovery to establish the amount in controversy is met.  *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002) (same); *Johnson*, 280 F. Supp. 2d at 1023 ("To the extent that a defendant feels that a plaintiff has not been forthright about his damages theory in a remand motion . . . a defendant should promptly conduct discovery upon remand in order to establish the amount-in-controversy within one year of the commencement of the action").

19.    Plaintiff's Complaint pleads causes of action for: (1) unpaid overtime in violation of Labor Code §§ 510 and 1198; (2) unpaid meal period premiums in violation of Labor Code §§ 226.7 and 512(a); (3) unpaid rest period premiums in violation of Labor Code § 226.7; (4) unpaid minimum wages in violation of Labor Code §§ 1194 and 1197; (5) failure to timely pay final wages in violation of Labor Code §§ 201 and 202; (6) failure to provide compliant wage statements in violation of Labor Code § 226(a); (7) failure to reimburse business expenses in violation of Labor Code §§ 2800 and 2802[3]; and (8) unlawful business practices in violation of Business and Professions Code §§ 17200, *et seq*.  Plaintiff's prayer for relief seeks, *inter alia*, an

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California  90071

---

[3] After filing the Complaint, Plaintiff dismissed the Seventh Cause of Action for Unreimbursed Business without prejudice.  See Exhibit H.

award of unpaid overtime wages, meal and rest period premiums, unpaid minimum wages, statutory penalties, liquidated damages, attorneys' fees, costs, and "such other and further relief as the court may deem just and proper."  Compl. Prayer for Relief; *see also* Compl. ¶¶ 51, 62, 71, 76, 82, 88, 89, 99.

20.     Plaintiff alleges that he was employed by Defendants from approximately August 2016 to September 2017.  Compl. ¶ 17.  Plaintiff was a full-time employee scheduled to work approximately five (5) days per week throughout the duration of his employment.  Quesnelle Decl. ¶ 6.  From August 1, 2016 to June 30, 2017, Plaintiff worked as a Sales Associate with an annual salary of $70,000.  Quesnelle Decl. ¶ 7.  In July 2017, Plaintiff began working as a Sales Representative and received $5,000 to act as a guaranteed payment to bridge the gap from his last wage statement as a Trauma Sales Associate until his first commission paycheck as a Trauma Sales Representative.  Quesnelle Decl. ¶ 8; Huey Decl. ¶ 7, Ex. 5 at 216:10-17.  As a Sales Representative from July 1, 2017 to August 8, 2017, Plaintiff earned total commissions in the amount of $9,939.48.  Quesnelle Decl. ¶ 8.

21.     Although Plaintiff argued in his Motion to Remand that the amount-in-controversy requirement was not met due to unreasonable violation rates attributed to his individual claims, his discovery responses revealed that he has not been forthright about his damages theory.  In particular, according to his verified Supplemental Responses to Form Interrogatories – General (Set One), Plaintiff contends he "was always on call . . . ."  Huey Decl. ¶ 6, Ex. 3.  Moreover, during his deposition, Plaintiff testified that he:

        a.  was on-call 24/7;

        b.  worked 7 days a week;

        c.  never took a meal break;

        d.  never took a rest break;

        e.  was paid a guaranteed salary of $5,000 for the month of July 2017; and

DEFENDANTS' NOTICE OF REMOVAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

f.  believes other sales representatives in California worked similar hours. Huey Decl. ¶ 7, Ex. 5.

22.    The allegations in Plaintiff's Complaint, his discovery responses, and his deposition testimony are sufficient to satisfy the amount in controversy requirement because they establish by a preponderance of the evidence that there is more than $75,000 at issue, exclusive of interest and costs.[4]

a.    *Failure to Provide Meal Periods.*  Plaintiff alleges that "[a]s a pattern and practice during the relevant time period,"

> "Plaintiff and the other class members who were scheduled to work for a period of time no longer than six (6) hours, and who did not waive their legally-mandated meal periods by mutual consent, were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes and/or without a rest period" (Compl. ¶ 57); and

> "Plaintiff and the other class members who were scheduled to work for a period of time in excess of six (6) hours were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes and/or without a rest period."  Compl. ¶ 58; *see also* Compl. ¶ 36.

Plaintiff further alleges that "Plaintiff and other class members are entitled to recover from Defendants one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest period is not provided."  Compl. ¶ 62.  Plaintiff "may recover up to two additional hours of pay on a single work day for meal period and rest break violations: one if any meal period violations occur in a work

---

[4] Defendants offer these calculations only for purposes of establishing diversity jurisdiction, subject to and without waiving: (1) their position that Plaintiff is not entitled to any damages whatsoever in this action or (2) their denials of the allegations in the Complaint.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

day and one if any rest break violations occur in a work day." *Marlo v. United Parcel Service, Inc.*, No. CV 03-04336 DDP (RZx), 2009 WL 1258491, at *7 (C.D. Cal. May 5, 2009); *see also accord United Parcel Service Wage & Hour Cases*, 196 Cal. App. 4th 57, 70 (2011) ("In short, we conclude, based upon the wording of section 226.7, subdivision (b), the IWC's wage orders, the public policy behind the statute and wage orders, and also the principle that we are to construe section 226.7 broadly in favor of protecting employees, that the employees in this case may recover up to two additional hours of pay on a single workday for meal period and rest period violations – one for failure to provide a meal period and another for failure to provide a rest period."). Between July 1, 2017 and August 8, 2017, when Plaintiff was employed as a Sales Representative, he earned $9,939.48 in commissions. Quesnelle Decl. ¶ 8. In July 2017, Plaintiff also received a guaranteed salary payment of $5,000. Quesnelle Decl. ¶ 8; Huey Decl. ¶ 7, Ex. 5 at 216:10-17. Between July 1, 2017 and August 8, 2017, there are approximately 6.50 workweeks: approximately 4.33[5] workweeks in July 2017 and approximately 2.17[6] workweeks in August 2017. During that period, Plaintiff was on-call 24 hours per day, 7 days per week. Huey Decl. ¶ 7, Ex. 5 at 65:24-66:23, 122:8-123:3. Those hours may constitute hours worked, and Plaintiff may be entitled to breaks during his 168 hours of on-call time. *See Medniola v. CPS Security Solutions, Inc.*, 60 Cal. 4th 833, 840 (2015) ("It is well established that an employee's on-call or standby time may require compensation."); *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 270-71 (2016) (holding "on-call rest periods do not satisfy an employer's obligation to relieve employees of all work-related duties and employer control").

In July 2017, Plaintiff's regular rate was $37.97 (which included $28.87 as the

---

[5] As there are 52 workweeks in one (1) year, there were approximately 4.33 workweeks during the month of July 2017. 52 (Workweeks per Year) / 12 (Months per Year) = 4.33 (Workweeks per Month).

[6] Plaintiff worked approximately 50% of the workweeks in August 2017, which is approximately 2.17 workweeks. 4.33 (Workweeks per Month) x 50% = 2.17 (Workweeks for August 2017).

DEFENDANTS' NOTICE OF REMOVAL

regular rate attributable to the salary component of his compensation [($5,000 / 4.33 workweeks) / 40 hours] and $9.10 as the regular rate attributable to the commission component of his compensation [($9,939.48 (total commissions) / 6.5 (total workweeks) / 168 (hours worked per workweek)]. As Plaintiff did not receive a guaranteed salary in August 2017, his regular rate in August 2017 was $9.10. Because Plaintiff testified that he did not take a single meal period, he was on-call 7 days per week and 24 hours per day, and he is entitled up to 1 meal period violation per workday, the amount in controversy for his meal period claim is **$1,289.10** ($1,150.87[7] + $138.23[8]).

      b.   *Failure to Provide Rest Periods.* Plaintiff alleges that "[a]s a pattern and practice during the relevant time period set forth herein, Defendants required Plaintiff and the other class members to work four (4) or more hours without authorizing or permitting a ten (10) minute rest period per each four (4) hour period worked." Compl. ¶ 67; *see also* Compl. ¶ 36. Plaintiff further alleges that "Plaintiff and the other class members are entitled to recover from Defendants one additional hour of pay at the employees' regular hourly rate of compensation for each workday that the rest period was not provided." Compl. ¶ 71. As explained above, Plaintiff may recover for a premium payment for one rest break violation each work day. *Marlo*, 2009 WL 1258491 at *7; *United Parcel Service Wage & Hour Cases*, 196 Cal. App. 4th at 70. Hence, the amount in controversy for this claim is **$1,289.10** ($1,150.87[9] + $138.23[10]).

      c.   *Unpaid Overtime Wages.* Plaintiff alleges that "[d]uring the

---

[7] 4.33 (Workweeks in July 2017) x 7 (Violations per Workweek) x $37.97 (July 2017 Regular Rate) = $1,150.87 (July 2017 Amount in Controversy).

[8] 2.17 (Workweeks in August 2017) x 7 (Violations per Workweek) x $9.10 (August 2017 Regular Rate) = $138.23 (August 2017 Amount in Controversy).

[9] 4.33 (Workweeks in July 2017) x 7 (Violations per Workweek) x $37.97 (July 2017 Regular Rate) = $1,150.87 (July 2017 Amount in Controversy).

[10] 2.17 (Workweeks in August 2017) x 7 (Violations per Workweek) x $9.10 (August 2017 Regular Rate) = $138.23 (August 2017 Amount in Controversy).

DEFENDANTS' NOTICE OF REMOVAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

relevant time period . . ., [he] . . . worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in a week." Compl. ¶ 48. Plaintiff further alleges that "[d]uring the relevant time period . . ., Defendants intentionally and willfully failed to pay overtime wages owed to Plaintiff" at "a rate of pay either time-and-one-half or two-times that person's regular rates of pay . . . ." Compl. ¶¶ 44, 49. "[A]ny employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Labor Code § 1194(a). Based on Plaintiff's testimony that he was on-call 24 hours per day, 7 days per week during the liability period, the amount in controversy for his overtime claim is **$41,251.19** ($36,827.86[11] + $4,423.33[12]).

    d.  *Non-Compliant Wage Statements.* Plaintiff alleges that "[a]s a pattern and practice, Defendants have intentionally and willfully failed to provide Plaintiff and the other class members with complete and accurate wage statements," which "include but are not limited to: the failure to include the total number of hours worked by Plaintiff and other class members." Compl. ¶¶ 85, 31. "An employee suffering injury as a result of a knowingly and intentional failure by an employer to [provide accurate, itemized wage statements] is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequently pay period, not to exceed an aggregate penalty of four thousand dollars

---

[11] 4.33 (Workweeks in July 2017) x [(32 (Overtime Hours per Workweek) x $37.97 (July 2017 Regular Rate) x 1.5 (Overtime Rate)) + (88 (Double Overtime Hours per Workweek) x $37.97 (July 2017 Regular Rate) x 2 (Double Overtime Rate))] = $36,827.86 (July 2017 Amount in Controversy).

[12] 2.17 (Workweeks in August 2017) x [(32 (Overtime Hours per Workweek) x $9.10 (August 2017 Regular Rate) x 1.5 (Overtime Rate)) + (88 (Double Overtime Hours per Workweek) x $9.10 (August 2017 Regular Rate) x 2 (Double Overtime Rate)) = $4,423.33 (August 2017 Amount in Controversy).

11

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

($4,000) . . . ."  Labor Code § 226(e).  Howmedica provided Plaintiff with four (4) wage statements while he was employed as a Trauma Sales Representative.  Quesnelle Decl. ¶ 9.  Thus, the amount in controversy for Plaintiff's non-compliant wage statement claim is **$350.00**.[13]

    e. *Failure to Pay Wages Upon Termination.*  Plaintiff alleges that "[a]s a pattern and practice during the relevant time period set forth herein, Defendants intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ."  Compl. ¶ 79; *see also* Compl. ¶ 38.  Plaintiff further alleges that "Plaintiff and the other class members are entitled to recover from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203."  Compl. ¶ 82.  "If an employer willfully fails to pay, without abatement or reduction . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commence; but the wages shall not continue for more than 30 days."  Labor Code § 203(a).  Using Plaintiff's weighted average regular rate of $28.33[14] during his employment as a Trauma Sales Representative, the amount in controversy for this claim is **$32,296.20**.[15]

    f. *Attorneys' Fees.*  "The amount in controversy includes the amount

---

[13] $50.00 ($50.00 x 1 wage statement) + $300.00 ($100.00 x 3 wage statements) = $350.00.

[14] [($37.97 (July 2017 Regular Rate) x 4.33 (Workweeks in July 2017)) + ($9.10 (August 2017 Regular Rate) x 2.17 (Workweeks in August 2017)] / [(4.33 (Workweeks in July 2017) + 2.17 (Workweeks in August 2017)] = $28.33 (Weighted Average Regular Rate)

[15] [($28.33 (Weighted Average Regular Rate) x 8 (Hours per Day)) + ($28.33 (Weighted Average Regular Rate) x 4 (Overtime Hours per Day) x 1.5 (Overtime Rate)) + ($28.33 (Weighted Average Regular Rate) x 12 (Double Overtime Hours per Day) x 2 (Double Overtime Rate))] x 30 (Number of Days Allegedly Not Paid) = $32,296.20.

DEFENDANTS' NOTICE OF REMOVAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

of damages in dispute, as well as attorney's fees, if authorized by statute or contract." *Kroske v. U.S. Bank Corp.*, 432 F. 3d 976, 979 (9th Cir. 2005); *see also Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998). If successful on his claims for unpaid overtime and inaccurate wage statements, Plaintiff may recover attorneys' fees. Labor Code §§ 226(e)(1), 1194(a). Applying a reasonable rate of 25% to the value of Plaintiff's claims for unpaid overtime and inaccurate wage statement claims adds an additional **$10,400.30**[16] to the amount in controversy in this case. *Garibay v. Archstone Cmtys. LLC*, 539 Fed. App'x 763, 764 (9th Cir. 2013) (establishing 25% benchmark award for attorneys' fees for the purpose of calculating the amount in controversy).

23.    Based solely on the foregoing six (6) causes of action and attorneys' fees sought in connection therewith, the amount in controversy is **$86,875.89**.[17] This showing as to the amount in controversy satisfies the standard for removal. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold; the notice need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 549 (2014).

24.    Based on the foregoing, the jurisdictional amount in controversy requirement of $75,000.00 for complete diversity jurisdiction is plainly met.

## V.    CAFA JURISDICTION

25.    This Court has original jurisdiction of this action under CAFA. 28 U.S.C. §§ 1332(d)(2) and (5) provide that a district court shall have original jurisdiction over a class action with 100 or more putative class members, in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000. Section

---

[16] $41,251.19 (Overtime Wages) + $350.00 (Non-Compliant Wage Statements) = $41,601.19 (Amount in Controversy for Overtime and Non-Compliant Wage Statement Claims). $41,601.19 x .25 (Attorneys' Fees Percentage) = $10,400.30.

[17] $1,289.10 (Meal Period) + $1,289.10 (Rest Period) + $41,251.19 (Overtime Wages) + $350.00 (Non-Compliant Wage Statements) + $32,296.20 (Failure to Pay Wages Upon Termination) + $10,400.30 (Attorneys' Fees) = $86,875.89.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

1332(d)(2) further provides that any member of the putative class must be a citizen of a state different from any defendant.

26.    As set forth below, pursuant to 28 U.S.C. § 1441, Defendants may remove the State Court Action to federal court under CAFA because: (i) members of the putative class are citizens of a state different from Defendants; (ii) this action is pled as a class action and involves more than 100 putative class members; and (iii) the amount in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs.

**A.    Minimal Diversity Of Citizenship Is Met.**

27.    Minimal diversity of citizenship is met when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

28.    Thus, Defendants satisfy the minimal diversity of citizenship required by CAFA, inasmuch as Plaintiff (who is a member of the putative class) is a citizen of California, and neither Stryker Corporation nor Howmedica Osteonics Corp. are citizens of California. *See* 28 U.S.C. § 1332(d)(2).

**B.    The Size Of The Putative Class Exceeds 100 Members**

29.    Plaintiff filed the State Court Action as a class action. Plaintiff identifies the putative class as consisting of: "All current and former California-based (*i.e.*, currently 'residing' in California with the intent to remain in California indefinitely) employees (whether hired directly or through a labor contractor or staffing agency) of Defendants paid wholly or in-part on a commission basis within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." Compl. ¶ 12. Four years prior to Plaintiff's filing of the Complaint is November 26, 2015. Between November 26, 2015 and January 2, 2020, Stryker Corporation and Howmedica Osteonics Corp. employed at least 250 individuals who were paid in whole or in part on a commission basis in California. Quesnelle Decl. ¶

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

DEFENDANTS' NOTICE OF REMOVAL

10.  This is more than sufficient to satisfy CAFA's class size requirement of at least 100 putative class members.  During the same time period, the putative class members were full-time employees scheduled to work approximately 40 hours per day, five (5) days per week, worked approximately 32,802 workweeks, and earned an average amount of $2,355 in commissions per workweek.  *Id.*  Sales representatives compromise approximately 75% of the putative class members.  *Id.*  Plaintiff's class allegations are based on his belief that other sales representatives in California worked similar hours to him – i.e. that they were on-call 24 hours per day, worked 7 days per week, and never took a meal or rest break.  Huey Decl. ¶ 7, Ex. 5 at 128:5-16, 65:24-66:23, 122:8-123:3, 66:24-67:17.

## C.    The Amount In Controversy Under CAFA Exceeds $5,000,000.

30.    Removal is appropriate when it is more likely than not that the amount in controversy exceeds the jurisdictional requirement.  Here, that amount is $5,000,000, in the aggregate.  *See, e.g., Cohn v. PetsMart, Inc.*, 281 F.3d 837, 839-40 (9th Cir. 2002).

31.    Without conceding that Plaintiff or the putative class members are entitled to or could recover damages in the amount or manner alleged, or at all, the amount in controversy in this putative class action far exceeds $5,000,000, exclusive of interest and costs.[18]  As set forth below, the allegations in Plaintiff's Complaint, his discovery responses, and his deposition testimony are sufficient to satisfy the amount in controversy requirement because they establish by a preponderance of the evidence that there is more than $5,000,000 at issue, exclusive of interest and costs.

32.    The amount in controversy is at least **$136,932,050.16**:

a.    *Failure to Provide Meal Periods.*  Plaintiff alleges that "[a]s a pattern and practice during the relevant time period,"

---

[18] This Notice does not concede and should not be construed as evidence that Defendants violated the legal rights of Plaintiff or any members of Plaintiff's purported class.  The argument and calculations of potential damages presented here are based on the allegations in the Complaint and solely for purposes of this Notice.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

1  "Plaintiff and the other class members who were scheduled to work for a

2  period of time no longer than six (6) hours, and who did not waive their

3  legally-mandated meal periods by mutual consent, were required to work

4  for periods longer than five (5) hours without an uninterrupted meal period

5  of not less than thirty (30) minutes and/or without a rest period" (Compl. ¶

6  57); and

7  "Plaintiff and the other class members who were scheduled to work for a

8  period of time in excess of six (6) hours were required to work for periods

9  longer than five (5) hours without an uninterrupted meal period of not less

10  than thirty (30) minutes and/or without a rest period."  Compl. ¶ 58; *see*

11  *also* Compl. ¶ 36.

12  As Plaintiff contends he was on-call 24 hours per day, 7 days per week and the putative

13  class members worked hours similar to his, it is reasonable to assume that they too were

14  on-call 24 hours per day, 7 days per week.  Huey Decl. ¶ 7, Ex. 5 at 128:5-16, 65:24-

15  66:23, 122:8-123:3, 66:24-67:17.  The amount in controversy for Plaintiff's class meal

16  period claim is **$3,219,188.28**.  Using a 100% violation rate per putative class member

17  per week (*i.e.* seven (7) non-compliant meal periods per putative class member per

18  week), this figure is arrived at by multiplying 32,802 workweeks by 7 hours of

19  premium pay at the average regular rate of $14.02[19] (*i.e.*, $14.02 per hour x 7 hours x

20  32,802 workweeks).  The amount in controversy for Plaintiff's class meal period claim

21  as well as the amounts in controversy for his class rest period, overtime, and failure to

22  pay wages upon termination claims is conservative because the regular rate calculation

23  is based solely on the average commissions earned by the putative class members even

24  though a significant number earned a base salary or draw in addition to commissions,

25  which would increase the regular rate.  Quesnelle Decl. ¶ 10.

---

[19] $2,355 (Average Commission per Workweek) / 168 (Hours per Workweek) = $14.02 (Average Regular Rate).

DEFENDANTS' NOTICE OF REMOVAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

b.  *Failure to Provide Rest Periods.*  Plaintiff alleges that "[a]s a pattern and practice during the relevant time period set forth herein, Defendants required Plaintiff and the other class members to work four (4) or more hours without authorizing or permitting a ten (10) minute rest period per each four (4) hour period worked."  Compl. ¶ 67; *see also* Compl. ¶ 36.  Like Plaintiff's class meal period claim, the amount in controversy for Plaintiff's class rest period claim is **$3,219,188.28**.  Using a 100% violation rate per putative class member per week (*i.e.* seven (7) non-compliant meal periods per putative class member per week), this figure is arrived at by multiplying 32,802 workweeks by 7 hours of premium pay at the average regular rate of $14.02[20] (*i.e.*, $14.02 per hour x 7 hours x 32,802 workweeks).

c.  *Unpaid Overtime Wages.*  Plaintiff alleges that "[d]uring the relevant time period . . . the other class members worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in a week."  Compl. ¶ 48.  Plaintiff further alleges that "[a]s a pattern and practice . . ., Defendants intentionally and willfully failed to pay overtime wages owed to . . . the other class members" at "a rate of pay either time-and-one-half or two-times that person's regular rates of pay . . . ."  Compl. ¶¶ 44, 49.  As Plaintiff contends the putative class members worked 168 hours per workweek, the amount in controversy for this claim is **$103,014,024.96**[21].

d.  *Failure to Pay Wages Upon Termination.*  Plaintiff alleges that "[a]s a pattern and practice during the relevant time period set forth herein, Defendants intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ."  Compl. ¶ 79; *see also* Compl. ¶ 38.

---

[20] $2,355 (Average Commission per Workweek) / 168 (Hours per Workweek) = $14.02 (Average Regular Rate).

[21] [($14.02 (Average Regular Rate) x 32 (Overtime Hours per Workweek) x 1.5 (Overtime Rate)) + ($14.02 (Average Regular Rate) x 88 (Double Overtime Hours per Workweek) x 2 (Double Overtime Rate))] x 32,802 (Approximate Workweeks in Liability Period) = $103,014,024.96 (Amount in Controversy).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

Plaintiff further alleges that "Plaintiff and the other class members are entitled to recover from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203." Compl. ¶ 82. "If an employer willfully fails to pay, without abatement or reduction . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commence; but the wages shall not continue for more than 30 days." Labor Code § 203(a). Approximately 108 putative class members had their employment end between November 26, 2016 and January 2, 2020, and they earned an average of approximately $2,426.20 in commissions per workweek during approximately the last year of their employment. Quesnelle Decl. ¶ 10. Using their average regular rate of $14.44, the amount in controversy for this claim is **$1,777,852.80**[22].

> e.   _Amount in Controversy for Remaining Causes of Action._ The amount in controversy exceeds the $5,000,000 CAFA threshold, without taking into account Plaintiff's causes of action for (1) unpaid minimum wages in violation of Labor Code §§ 1194 and 1197; (2) failure to provide compliant wage statements in violation of Labor Code § 226(a); and (3) unlawful business practices in violation of Business and Professions Code §§ 17200, _et seq._ Even though Defendants have not assigned any particular amount to these causes of action, assignment of any sum only further increases the amount in controversy well beyond $5,000,000.

> f.   _Attorneys' Fees._ Moreover, the foregoing estimate of the amount in controversy does not include the attorneys' fees sought by Plaintiff. As explained above, when the underlying substantive law provides for an award of attorneys' fees, a

---

[22] [($14.44 (Average Regular Rate) x 8 (Hours per Day)) + ($14.44 (Average Regular Rate) x 4 (Hours per Day) x 1.5 (Overtime Rate)) + ($14.44 (Average Regular Rate) x 12 (Hours per Day) x 2 (Double Overtime Rate))] x 30 (Number of Days Allegedly Not Paid) x 108 (Putative Class Members) = $1,777,852.80 (Amount in Controversy).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

party may include that amount in their calculation of the amount in controversy. *See Galt G/S*, 142 F. 3d at 1156. Plaintiff's Complaint requests attorneys' fees in this action. Applying the 25% attorneys' fee benchmark to the overtime claim alone adds **$25,753,506.24**[23] to the amount in controversy in this case. *See, e.g., Garibay*, 539 Fed. App'x at 764 (establishing 25% benchmark award for attorneys' fees for the purpose of calculating the amount in controversy). Plaintiff may also recover attorneys' fees if he prevails on his claims for unpaid minimum wages, inaccurate wage statements, and unreimbursed business expense claim. Labor Code §§ 226(e)(1), 1194(a), 2802(d). Should there be any doubt as to whether Defendants have demonstrated the amount in controversy, Plaintiff's request for attorneys' fees, as well as his other claims, should be included in analyzing the amount in controversy.

    g.    *Total Amount in Controversy for Only Four Causes of Action And Attorneys' Fees.* A summary of the amount in controversy established with respect to the four causes of action above is as follows:

| **Cause of Action** | **Amount in Controversy** |
| --- | --- |
| Meal Period | $3,219,188.28 |
| Rest Period | $3,219,188.28 |
| Overtime | $103,014,024.96 |
| Failure to Pay Wages Upon Termination | $1,777,852.80 |
| Attorneys' Fees | $25,753,506.24 |
| **TOTAL:** | $136,983,760.56 |

/ / /

/ / /

/ / /

---

[23] $103,014,024.96 (Amount in Controversy for Overtime Claim) x 25% = $25,753,506.24 (Attorneys' Fees)

DEFENDANTS' NOTICE OF REMOVAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

33.   **WHEREFORE**, Defendants hereby remove this Action from the Superior Court of the State of California, County of Alameda, to this Court, on two alternative grounds: pursuant to diversity (28 U.S.C. §§ 1332(a) and 1441) and CAFA (28 U.S.C. §§ 1332(d)).

DATED:  October 23, 2020                         HUNTON ANDREWS KURTH LLP

By: /s/ Michele J. Beilke
    Michele J. Beilke
    Julia Y. Trankiem
    Gabriel M. Huey
    Attorneys for Defendants
    STRYKER CORPORATION and
    HOWMEDICA OSTEONICS CORP.

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071**

DEFENDANTS' NOTICE OF REMOVAL