IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT PICETTI,<br><br>    Plaintiff,<br><br>  v.<br><br>STRYKER CORPORATION, et al.,<br><br>    Defendants. | Case No. 20-cv-07454-MMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** |

Before the Court is plaintiff Robert Picetti's ("Picetti") Motion to Remand, filed November 24, 2020. Defendants Stryker Corporation ("Stryker") and Howmedica Osteonics Corp. ("Howmedica") have filed opposition, to which Picetti has replied.[1] Having read and considered the papers filed in support of and in opposition to the motion, the Court hereby rules as follows.[2]

## BACKGROUND

In his Complaint, initially filed in state court on November 26, 2019, Picetti alleges "[d]efendants, jointly and severally, employed [him] from approximately August of 2016 to September of 2017" and "paid [him] wholly or in-part on a commission basis." (See Compl. ¶¶ 17, 18.) According to Picetti, defendants "failed to compensate [him] for all hours worked, missed meal periods, and/or missed rest breaks." (See Compl. ¶ 18.)

---

[1] On April 21, 2021, Picetti also filed a "Statement of Recent Decision," which filing defendants move to strike as an "unauthorized sur-reply." (See Mot. to Strike at 1:2-10.) In particular, defendants argue, the filing exceeds the limited scope permitted under this district's local rules. See Civil L.R. 7-3(d)(2). The Court agrees, and, accordingly, defendants' motion to strike is hereby GRANTED.

[2] By order filed January 19, 2021, the Court took the matter under submission.

Based thereon, Picetti asserts, on his own behalf and on behalf of a putative class, the following eight causes of action: (1) "Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime)"; (2) "Violation of California Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums)"; (3) "Violation of California Labor Code § 226.7 (Unpaid Rest Period Premiums)"; (4) "Violation of California Labor Code §§ 1194 and 1197 (Unpaid Minimum Wages)"; (5) "Violation of California Labor Code §§ 201 and 202 (Final Wages Not Timely Paid)"; (6) "Violation of California Labor Code § 226(a) (Non-Compliant Wage Statements)"; (7) "Violation of California Labor Code §§ 2800 and 2802 (Unreimbursed Business Expenses)";[3] and (8) "Violation of California Business & Professions Code § 17200, et seq." (See Compl. at 1.) The complaint does not specify the amount of damages Picetti seeks, either on his own behalf or on behalf of the putative class.

On January 2, 2020, defendants removed the above-titled action, asserting the district court had diversity jurisdiction, either under 28 U.S.C. § 1332(a) or § 1332(d). On June 8, 2020, United States District Judge Jon S. Tigar granted Picetti's motion to remand, finding defendants had failed to show diversity jurisdiction existed, for the reason that they failed to make a sufficient showing as to the requisite amount in controversy under either § 1332(a) or § 1332(d). Thereafter, in state court, the parties engaged in discovery. On October 23, 2020, relying primarily on information they obtained from Picetti during the course of discovery, defendants again removed the above-titled action, and, again, rely on § 1332(a) and § 1332(d).

**DISCUSSION**

**A. Diversity Jurisdiction Under § 1332(a)**

Under § 1332(a), a district court has diversity jurisdiction where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and

---

[3] On September 28, 2020, Picetti voluntarily dismissed his Seventh Cause of Action. (See Notice of Removal Ex. H.)

2

the matter is "between . . . citizens of different States." See 28 U.S.C. § 1332(a). Here, there is no dispute that the parties are diverse in citizenship, as Picetti is a citizen of California, Stryker is a citizen of Michigan, and Howmedica is a citizen of New Jersey. (See Notice of Removal ¶¶ 13-16.) The parties, however, dispute whether the amount in controversy exceeds $75,000.

Where, as here, a complaint filed in state court "does not demand a dollar amount," the defendant "bears the burden of proving by a preponderance of evidence that the amount in controversy exceeds [$75,000]." See Singer v. State Farm Mutual Automobile Ins. Co., 116 F.3d 373, 376 (9th Cir. 1997).

Here, defendants offer undisputed evidence that Picetti was employed by Howmedica as a "Trauma Sales Representative" from July 1, 2017, through August 8, 2017 (see Quesnelle Decl. ¶¶ 8), a period of 39 days,[4] and that, during said 39-day period, Picetti received one compensation payment of $5000, as well as commissions in the total amount of $9939.48 (see id.) Additionally, defendants rely on testimony Picetti gave at his deposition, specifically, his testimony that he "probably [worked] around 100" hours each week (see Huey Decl. Ex. 5 at 65:10-12, 65:24-65:1, 66:21-23), that he "never had time to take a meal break for 30 minutes or a rest break for ten minutes" (see id. Ex. 5 at 67:14-17), and that he was "on-call seven days a week and worked seven days a week" (see id. Ex. 5 at 66:12-13). Lastly, defendants rely on Picetti's sworn statement, made in response to an interrogatory asking him to identify the "nature of [the] work" he performed, in which, after he identified several tasks, such as "restocking instruments at hospitals," he stated he was "always on call, doing many of these tasks throughout the night." (See id. Ex. 3 at 4:17-20, 6:20-21; Ex. 4.)

In the Notice of Removal, as to Picetti's individual claims, defendants calculate the

---

[4] It is undisputed that, prior to working as a Trauma Sales Representative, Picetti was employed by Howmedica for eleven months as a "Trauma Sales Associate." (See id. ¶ 7.) In calculating the amount in controversy, defendants rely solely on the period in which Picetti worked as a Trauma Sales Representative.

3

amount in controversy to be $86,875.89. (See Notice of Removal ¶ 23.) That figure, however, is not based on Picetti's having worked 100 hours each week.[5] Rather, relying on Picetti's statements that he was "on-call seven days a week" (see Huey Decl. Ex. 5 at 66:12-13), and that he "was always on call, doing many of [his] tasks throughout the night" (see id. Ex. 3 at 6:20-21), defendants contend Picetti is claiming he worked 168 hours a week, i.e., 24 hours a day. The Court is not persuaded.

Although "a damages assessment may require a chain of reasoning that includes assumptions," such assumptions "cannot be pulled from thin air"; they "need some reasonable ground underlying them." See Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1199 (9th Cir. 2015). Here, Picetti has not asserted in his complaint, nor in any document defendants have offered, a claim that he is entitled to compensation for any hours beyond his claimed 100 hours at work. Nor, if defendants had any question about what Picetti is claiming, did they seek any clarification thereof. Moreover, if any ambiguity arguably exists, the most reasonable understanding of the above-referenced statements is that Picetti was, as a practical matter, unable to take meal and rest breaks because he was required to be on call during his 100 working hours.

Accordingly, as to Picetti's individual claims, the Court finds defendants have not met their burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000.

**B. Diversity Jurisdiction Under § 1332(d)**

Under § 1332(d), a district court has diversity jurisdiction where "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," see 28 § 1332(d)(2), "any member of a class of plaintiffs is a citizen of a State different from any defendant," see 28 U.S.C. § 1332(d)(2), and the putative class membership is not "less than 100," see 28 U.S.C. § 1332(d)(5)(B). Here, as noted above, Picetti seeks

---

[5] Defendants do not offer a calculation based on a 100-hour work week, which would appear to result in a sum well below the statutory minimum.

4

to assert his claims on behalf of a class,[6] and there is no dispute that Picetti and defendants are citizens of different states or that the putative class consists of "at least 250 individuals." (See Quesnelle Decl. ¶ 10.a.) The parties, however, dispute whether the amount in controversy exceeds $5,000,000. The Court next turns to that question.

The defendant's burden to establish diversity jurisdiction under § 1332(d) is the same as the burden under § 1332(a), specifically, to "prove by a preponderance of the evidence that the amount in controversy requirement has been met." See Abrego Abrego v. Dow Chemical Co., 443 F.3d 676, 683, 685 (9th Cir. 2006).

In the Notice of Removal, as to the claims of the putative class, defendants calculate the amount in controversy to be $136,983,760.56. (See Notice of Removal ¶ 23.) This calculation, much like the calculation as to Picetti's individual claims, is based on a 168-hour work week.

In support of such argument, defendants rely on Picetti's above-referenced deposition testimony and interrogatory response that he was "on-call," and, in addition, on the following deposition testimony given by Picetti:

> Q: And other than the sales reps that you've testified about,[7] did you have any personal knowledge of the hours that the other sales reps in California worked?
>
> A: I had – I had conversations with other reps in regards to how their days were, in general. And it was my assumption that we were all running around, all the time, doing very similar – similar things, in cases – spending eight to ten hours, 12 hours at one hospital, if it's back to back cases, or whatever it is. It was a pretty common understanding between the reps in this specific field of trauma that our days were very similar.
>
> Q. And other than making that assumption, do you have any specific knowledge, or personal knowledge of the hours that the other sales reps worked?

---

[6] In the complaint, Picetti defines the class as "[a]ll current and former California-based . . . employees (whether hired directly or through a labor contractor or staffing agency) of [d]efendants paid wholly or in-part on a commission basis within the State of California at any time during the period from four years preceding of this Complaint to final judgment." (See Compl. ¶ 12.)

[7] Defendants have not offered Picetti's earlier testimony as to "sales reps."

5

A. No.

(See Huey Decl. Ex. 5 at 128:5-20.)

As discussed above, defendants' argument fails at the first step, i.e., their assumption that Picetti is claiming a 168-hour work week; consequently, their argument necessarily fails at the second, i.e., their assumption that Picetti is claiming the putative class members likewise worked that many hours. See Harris v. KM Industrial, Inc., 980 F.3d 694, 701 (9th Cir. 2020) (holding defendant failed to "carry [its] burden" where "it relied on assumptions . . . that were unreasonable").

Moreover, on the record presented, it is unclear whether Picetti's reference to similarity among Trauma Sales Representative pertains to his understanding, which admittedly is based solely on hearsay, that other Trauma Sales Representatives performed tasks similar to his, worked a number of hours similar to those he worked, were similarly on-call, and/or some other condition(s). See id. (affirming order remanding case to state court where defendant "failed to provide" evidence sufficient to supports "its assumption that all . . .[c]lass members were the same").

Accordingly, the Court finds, as to the class claims, defendants have not met their burden of establishing by a preponderance of the evidence that the amount in controversy exceeds the sum of $5,000,000.

## CONCLUSION

For the reasons stated above, Picetti's motion to remand is hereby GRANTED, and the case is hereby REMANDED to the Superior Court of the State of California, in and for the County of Alameda.

**IT IS SO ORDERED.**

Dated: May 17, 2021

MAXINE M. CHESNEY
United States District Judge